Kimberly Yvonne MEEKS, Appellant,

v.

The STATE of Texas, Appellee.

No. 06-03-00142-CR.

Court of Appeals of Texas, Texarkana.

Submitted Jan. 26, 2004.

Decided Feb. 6, 2004.

Rehearing Overruled Feb. 24, 2004.

C. Wayne Huff, Dallas, for Appellant.

Tammy Ardolf, Asst. Dist. Atty., William (Bill) Hill Jr., Dallas County Dist. Atty., Dallas, for State.

Before MORRISS, C.J., ROSS and CARTER, JJ.

OPINION

Opinion by Justice CARTER.

Kimberly Yvonne Meeks appeals her conviction by jury trial of capital murder of Paul Blackmon. Meeks raises six issues on appeal. Meeks argues the trial court erred in 1) sustaining the State's objections to extraneous unlawful acts committed by witnesses Sheila Skelton and Veronica Skelton, 2) failing to charge the jury that the testimony of Veronica Skelton required corroboration if the jury found she was an accomplice, and 3) failing to charge the jury that the testimony of Veronica Skelton required corroboration because she was an accomplice as a matter of law. In points of error (4) and (5), Meeks contends there is factually and legally insufficient evidence to support the jury's finding that the murder was committed in the course of a robbery. In her last point of error, Meeks argues the trial court erred by denying her request for a jury instruction on the lesser-included offense of murder. We affirm the judgment of the trial court.

At the time of the murder, Meeks and her accomplice, Sheila, were staying with Sheila's mother, Alice Dunn, in an apartment at 1006 Maryland. Sheila's fourteen-year-old niece, Veronica, was spending the weekend at the apartment, which she did often.

On the evening of January 4, 2002, Sheila asked her son, Danny Lopez, to give her and Meeks a ride to Charlene's, a bar on Harry Hines Boulevard. Lopez dropped the women off at the bar sometime before 11:00 p.m. that evening. At the bar, Sheila and Meeks met Blackmon, the victim. Sheila and Meeks asked Blackmon for a

ride home, to which he agreed. On the way home, the group stopped at the Royal Inn and Blackmon gave Sheila money to buy crack cocaine and retrieved some marihuana, which he had stashed under the hood of his pickup truck.

When Blackmon, Meeks, and Sheila arrived home, Veronica joined Sheila and Meeks in smoking the marihuana and crack cocaine. While Blackmon also participated in the smoking of marihuana, he did not smoke any of the crack cocaine. When the group started getting sleepy, Sheila insisted Blackmon leave so that they could lock the apartment and sleep. Blackmon decided to sleep in his truck because he felt he was too intoxicated to drive. Sheila provided him with a blanket and pillow. Later, Meeks awoke Sheila and asked her to go ask Blackmon for some more money for drugs. Meeks stated that she knew he had more money. When Blackmon refused to give Sheila any more money for drugs, Meeks sent Veronica out to get money. Blackmon still refused to provide any more money.

According to Sheila and Veronica, Meeks became angry and started talking about killing Blackmon. Meeks then went outside armed with a kitchen knife. Sheila followed shortly behind Meeks and observed Meeks repeatedly stab Blackmon. Veronica, who remained at the door of the apartment, observed Meeks appear to stab Blackmon. After Blackmon managed to get the door of the truck shut, Sheila testified that she told Meeks she would "finish" Blackmon. Sheila testified that Meeks handed her a small pocketknife and then returned to the apartment. According to Sheila, she got inside the truck and attempted to comfort Blackmon. Sheila testified that she did not stab Blackmon. Sheila called Veronica closer and told her to go and get Meeks, which Veronica did. When Meeks returned to the truck, Sheila

and Meeks drove to the nearby Fannidella Apartments and disposed of Blackmon's body. While on the way to the apartments, Sheila testified that Meeks took money from Blackmon's wallet. Meeks and Sheila then returned to the apartment and cleaned up the scene and themselves. Both Sheila and Veronica testified that Veronica did not participate in the murder, clean-up, or the disposal of Blackmon's body and truck.

Around 6:45 a.m., a tenant at the Fannidella Apartments found Blackmon lying in a pool of blood in the apartment parking lot. The medical examiner testified that Blackmon died from six stab wounds.

## Extraneous Unlawful Acts

In his first point of error, Meeks argues the trial court erred in refusing to allow evidence that Veronica and Sheila were involved in drug dealing and prostitution together. Outside the presence of the jury, Veronica testified that, at Sheila's request, Veronica had previously sold drugs and engaged in prostitution, and was a runaway at the time of the murder.

Absent an abuse of discretion, an appellate court should not disturb a trial court's evidentiary ruling. *Montgomery v. State*, 810 S.W.2d 372, 390 (Tex.Crim.App. 1990) (op. on reh'g); *see Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). "[A]s long as the trial court's ruling was at least within the zone of reasonable disagreement, the appellate court will not intercede." *Montgomery*, 810 S.W.2d at 391.

The Texas Rules of Evidence prohibit the use of specific unadjudicated acts to impeach a witness. Rule 608(b) provides that:

Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other

than conviction of crime as provided in Rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence.

TEX.R. EVID. 608(b). Rule 608(b) prohibits "the utilization of specific instances of conduct ... for impeachment except to expose bias, correct any affirmative misrepresentations made on direct examination, or demonstrate lack of capacity." *Lagrone v. State*, 942 S.W.2d 602, 613 (Tex.Crim.App. 1997); *see Blevins v. State*, 884 S.W.2d 219, 229 (Tex.App.-Beaumont 1994, no pet.) (false impression).

■ Meeks contends the specific acts indicate a close relationship between Veronica and Sheila and should have been admissible in order to show bias in favor of Sheila. Meeks argues the close relationship would have created a motive for Veronica to lie on behalf of Sheila. We note that the legitimate exploration of matters indicating the friendship or leaning of witnesses is permitted. *Hinojosa v. State*, 788 S.W.2d 594, 600 (Tex.App.-Corpus Christi 1990, pet. ref'd). The trial court did admit some evidence of the relationship between Veronica and Sheila. Evidence that Sheila was Veronica's aunt was admitted. Veronica also testified she did not want to get Sheila into any trouble. However, the proposition that the acts of prostitution and drug dealing establish a close enough relationship to indicate bias on behalf of Veronica or Sheila seems precarious at best. We believe that whether these specific acts are relevant to the bias of either witness is within the zone of reasonable disagreement. Therefore, the trial court did not abuse its discretion in excluding the testimony.[1]

### Was Veronica an Accomplice?

■ In her second point of error, Meeks argues the trial court erred in failing to charge the jury that the testimony of Veronica required corroboration if the jury found that Veronica was an accomplice. In her third point of error, Meeks contends the trial court erred in failing to charge the jury that the testimony of Veronica required corroboration. Meeks contends the evidence established that Veronica was an accomplice, which required an instruction on corroboration. *See* TEX. CODE CRIM. PROC. ANN art. 38.14 (Vernon 1979).

■ An accomplice is one who participates in an offense before, during, or after its commission, to the extent that he or she can be charged with the offense or with a lesser-included offense. *Herron v. State*, 86 S.W.3d 621, 631 (Tex.Crim.App. 2002). "A person is an accomplice if there is sufficient evidence connecting him to the criminal offense as a blameworthy participant." *Green v. State*, 72 S.W.3d 420, 423 (Tex.App.-Texarkana 2002, pet. ref'd); *see Blake v. State*, 971 S.W.2d 451, 455 (Tex.

---

1. We note that Meeks alleges that the suppression of the testimony resulted in a violation of the right of confrontation guaranteed by Article I, Section 10 of the Texas Constitution and the Sixth and Fourteenth Amendments to the United States Constitution. The Sixth Amendment, made applicable to the States by the Fourteenth Amendment, guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." U.S. CONST. amends. VI, XIV; *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Lopez v. State*, 18 S.W.3d 220, 222 (Tex.Crim.App. 2000); *see also Pointer v. Texas*, 380 U.S. 400, 406, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) (applying the Sixth Amendment to the States). However, Meeks has not included any argument concerning this allegation or cited any caselaw specific to this argument. The Texas Court of Criminal Appeals has held that Rule 608(b) does not violate the right of confrontation per se, but may under some circumstances. *Lopez*, 18 S.W.3d at 224-25. Meeks has not shown that her right to confrontation was violated.

Crim.App.1998). The witness must perform an affirmative act and be subject to prosecution for the offense in order to be considered an accomplice. *Kutzner v. State,* 994 S.W.2d 180, 188 (Tex.Crim.App. 1999); *Kunkle v. State,* 771 S.W.2d 435, 439 (Tex.Crim.App.1986). However, mere presence at the scene does not render a person an accomplice. *Solomon v. State,* 49 S.W.3d 356, 361 (Tex.Crim.App.2001); *Kunkle,* 771 S.W.2d at 439. Even assisting in the moving of a dead body does not render a defendant an accomplice where the defendant played no role in the murder. *Paredias v. State,* No. 74,293, 2004 Tex.Crim.App. LEXIS 1 (Tex.Crim.App. Jan. 14, 2004); *Smith v. State,* 721 S.W.2d 844, 851 (Tex.Crim.App.1986); *see Medina v. State,* 7 S.W.3d 633, 641 (Tex.Crim.App. 1999); *see also Long v. State,* 10 S.W.3d 389, 394 (Tex.App.-Texarkana 2000, pet. ref'd).

■ Meeks contends Veronica was an accomplice as a matter of law. A prosecution witness who is indicted for the same offense as the defendant or a lesser-included offense arising out of the same criminal episode is an accomplice as a matter of law. *Herron,* 86 S.W.3d at 631; *Ex parte Zepeda,* 819 S.W.2d 874, 876 (Tex. Crim.App.1991). An accomplice as a matter of law also arises out of evidence that leaves no doubt that the witness is an accomplice. *Blake,* 971 S.W.2d at 455; *Gamez v. State,* 737 S.W.2d 315, 322 (Tex. Crim.App.1987); *Brown v. State,* 640 S.W.2d 275, 279 (Tex.Crim.App. [Panel Op.] 1982). Since Veronica had not been indicted for any offense out of the criminal episode and the evidence does not conclusively establish she was an accomplice, Veronica was not an accomplice as a matter of law.

■ Meeks alleges, in her second point of error, that the evidence created a fact issue as to whether Veronica was an accomplice. If the evidence creates a fact issue, the witness may be an accomplice as a matter of fact and the issue should be submitted to the jury. *Drummond v. State,* 624 S.W.2d 690, 692 (Tex.App.-Beaumont 1981), *pet. ref'd,* 628 S.W.2d 781 (Tex. Crim.App.1982). Meeks argues Veronica is an accomplice because the juvenile court could have waived jurisdiction and prosecuted her in criminal court. She also argues Veronica was an accomplice because she solicited funds from the deceased before the stabbing. However, neither the murder or the robbery had been committed nor even discussed at that point. Meeks also argues Veronica was an accomplice because, just before Blackmon's body was being moved, Veronica called Meeks back outside at Sheila's request. Meeks contends these actions create a fact issue, which should have been presented to the jury as to whether Veronica was an accomplice.

■ The evidence did not raise a fact issue as to whether Veronica was an accomplice because Veronica lacked the required culpable mental state. Under the law of parties, a person is a party to an offense if "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." Tex. Pen.Code Ann. § 7.02(a)(2) (Vernon 2003). This requires a culpable mental state of "conscious objective or desire to engage in the conduct or cause the result." Tex. Pen.Code Ann. § 6.03(a) (Vernon 2003). When the commission of the murder was committed by another person during a robbery, the defendant must have intended to aid in capital murder, not just robbery, in order to be criminally liable for capital murder. *Webb v. State,* 760 S.W.2d 263, 268 (Tex.Crim. App.1988); *Duke v. State,* 950 S.W.2d 424, 427 (Tex.App.-Houston [1st Dist.] 1997,

pet. ref'd). Even to be charged with a lesser-included offense, such as robbery, Veronica must have had the conscious desire to aid or attempt to aid in that offense. It must be shown that the accused harbored the specific intent to promote or assist in the commission of the offense. *Hanson v. State,* 55 S.W.3d 681, 689 (Tex. App.-Austin 2001, pet. ref'd). Therefore, in order to be an accomplice, Veronica must have had the conscious desire to aid in the murder of Blackmon or the lesser-included offense of robbery. There is no direct evidence Veronica had this required *mens rea.* Further, we do not believe that either the solicitation of money before the murder or robbery had even been discussed, or that asking Meeks to return outside at the request of Sheila indicates Veronica intended to aid in the commission of the murder or any lesser-included offense. As such, Veronica was not an accomplice as a matter of law or as a matter of fact, and the trial court did not err in failing to give an accomplice witness instruction.

### Sufficiency of the Evidence

Meeks contends in her fourth and fifth points of error the evidence is legally and factually insufficient to support the verdict that the murder was committed in the course of a robbery. Meeks contends that, because both Sheila and Veronica were accomplices, the corroboration is not sufficient to connect her to the killing of Blackmon.

In our review of the legal sufficiency of the evidence, we employ the standards set forth in *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This calls on the court to view the relevant evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reason-

able doubt. *Johnson v. State,* 23 S.W.3d 1, 7 (Tex.Crim.App.2000); *Turner v. State,* 805 S.W.2d 423, 427 (Tex.Crim.App.1991).

In contrast to legal sufficiency, a factual sufficiency review dictates that the evidence be viewed in a neutral light, favoring neither party. *Johnson,* 23 S.W.3d at 7; *see Clewis v. State,* 922 S.W.2d 126, 134 (Tex.Crim.App.1996). In determining the factual sufficiency of the evidence to establish the elements of the offense, we view all the evidence in a neutral light and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong, or so weak as to be clearly wrong or manifestly unjust. *Johnson,* 23 S.W.3d at 7; *Clewis,* 922 S.W.2d at 129. "However, a factual sufficiency review must be appropriately deferential so as to avoid the appellate court's substituting its own judgment for that of the fact finder." *Jones v. State,* 944 S.W.2d 642, 648 (Tex.Crim.App. 1996); *see Clewis,* 922 S.W.2d at 133. "The court's evaluation should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony." *Jones,* 944 S.W.2d at 648.

Meeks argues that there is insufficient evidence connecting her to the crime. Article 38.14 provides that "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX.CODE CRIM. PROC. ANN. art. 38.14. The State argues that Article 38.14 should have been pled as a separate point of error. The Texas Court of Criminal Appeals has held that corroboration of the accomplice witness testimony is a statutory requirement imposed by the Legislature and declined to "impose legal and

factual sufficiency standards upon a review of accomplice witness testimony under Article 38.14." *Cathey v. State*, 992 S.W.2d 460, 462 (Tex.Crim.App.1999). The State argues Meeks should have separately argued this point of error from her sufficiency points of error and has waived the argument by failing to do so. However, there was sufficient corroboration of the accomplice witness testimony.

■■■■ The testimony of Veronica, who was not an accomplice, the testimony of Lopez, and other physical evidence corroborated the accomplice testimony of Sheila. The test for determining the sufficiency of the corroboration is to eliminate the accomplice testimony from consideration and then determine if there is any other incriminating evidence which "tends to connect" the defendant with the crime. *Hernandez v. State*, 939 S.W.2d 173, 176 (Tex.Crim.App.1997); *Reed v. State*, 744 S.W.2d 112, 126 (Tex.Crim.App.1988). The nonaccomplice evidence does not need to prove all the elements of the alleged offense. *Hernandez*, 939 S.W.2d at 176; *Underwood v. State*, 967 S.W.2d 925, 928 (Tex.App.-Beaumont 1998, pet. ref'd). Lopez testified he gave Sheila and Meeks a ride to the bar. Veronica testified Meeks sent her outside at the apartment to ask Blackmon for money. When Blackmon refused to provide more money for drugs, Veronica testified Meeks became angry and started talking about killing Blackmon. Although she remained at the door of the apartment, Veronica observed Meeks appear to stab Blackmon. Last, DNA found on a boot in the apartment matched Blackmon's DNA with a 1 in 829 billion probability. The boot was too small to have belonged to Veronica or Sheila. The blood-soaked pillowcase found beside Blackmon matched a pillowcase found in the apartment where Meeks had been staying. A pink birth announcement that Blackmon kept in his wallet was found in the apartment as well. The Texas Court of Criminal Appeals has held that DNA evidence on clothing of the accused may tend to connect the accused to the murder. *See Trevino v. State*, 991 S.W.2d 849, 852 (Tex.Crim.App.1999); *Gosch v. State*, 829 S.W.2d 775, 781 (Tex.Crim.App.1991). There is clearly sufficient corroborating evidence of Sheila's testimony which tends to connect Meeks to the offense.

Meeks argues that no rational trier of fact could have found the essential elements of the crime. Additionally, Meeks contends the proof of guilt is "so obviously weak as to undermine confidence in the jury's determination." Meeks argues that no rational person could have concluded she committed the murder in the course of a robbery.

■■■■ The State was required to prove Meeks caused the death of Blackmon during the course of a robbery. Capital murder requires the State to prove that Meeks intended to rob Blackmon either before or during the murder. *See Cooper v. State*, 67 S.W.3d 221, 223 (Tex. Crim.App.2002). The intent can be inferred from circumstantial evidence. *Wolfe v. State*, 917 S.W.2d 270, 275 (Tex. Crim.App.1996). In *Conner v. State*, the Texas Court of Criminal Appeals held that evidence the defendant asked the victim for money before murdering the victim was legally sufficient to conclude the murder was committed during the course of a robbery. 67 S.W.3d 192, 197 (Tex.Crim. App.2001); *see Zapata v. State*, 15 S.W.3d 661, 664 (Tex.App.-Beaumont 2000, no pet.). The Texas Court of Criminal Appeals has also held that intent can be inferred from theft occurring immediately after a murder. *McGee v. State*, 774 S.W.2d 229, 234 (Tex.Crim.App.1989); *see Cooper*, 67 S.W.3d at 224.

There is sufficient evidence Meeks caused the death of Blackmon during the course of a robbery. Veronica and Sheila both testified Meeks convinced them to solicit money from Blackmon before the murder. Veronica testified Meeks then said "we should just off him." According to Veronica, Sheila tried to tell her to "just stop," but Meeks refused to calm down. Veronica testified Meeks then retrieved a knife from the kitchen and went outside. Although she remained at the door of the apartment, Veronica observed Meeks appear to stab Blackmon. When Blackmon refused to provide more money for drugs, Veronica testified Meeks became angry and said she knew he had more money. Sheila testified Meeks took money from Blackmon's wallet while they were moving the body. Based on this evidence, we believe a rational person could have concluded Meeks committed murder while in the course of committing or attempting to commit robbery. Further, the evidence is not so weak as to undermine confidence in the jury, and the verdict is not against the overwhelming weight of the evidence.

### Lesser–Included Offense

■■■■ In her sixth point of error, Meeks claims the trial court erred in denying her requested submission of an instruction on the lesser-included offense of murder. The decision of whether to submit an instruction of a lesser-included offense requires a two-part analysis. *Cf. Royster v. State,* 622 S.W.2d 442 (Tex. Crim.App. [Panel Op.] 1981), *with Rousseau v. State,* 855 S.W.2d 666, 673 (Tex. Crim.App.1993). The two-part analysis involves:

> [F]irst, the lesser included offense must be included within the proof necessary to establish the offense charged, and, second, some evidence must exist in the record that would permit a jury rational-

ly to find that if the defendant is guilty, he is guilty only of the lesser offense. *Rousseau,* 855 S.W.2d at 673. An offense is a lesser-included offense if: "it is established by proof of the same or less than all the facts required to establish the commission of the offense charged." TEX.CODE CRIM. PROC. ANN. art. 37.09 (Vernon 1979). In this case, murder is a lesser-included offense of capital murder, because it is established by the same facts as capital murder.

The second part of the test requires us to determine whether there is "some evidence" from which a rational jury could conclude the defendant is guilty only of the lesser-included offense, not the greater offense. *Moore v. State,* 969 S.W.2d 4, 8 (Tex.Crim.App.1998); *see Rousseau,* 855 S.W.2d at 673. Meeks argues the jury should have been instructed on the lesser-included offense of murder because the jury could have reasonably concluded based on the evidence that the killing of the deceased was not committed in the course of committing robbery. The State did not present any evidence Meeks personally asked Blackmon for money immediately before the attack. Sheila testified Meeks started stabbing Blackmon as soon as the door of the truck was opened. It was not until the body was being moved to another apartment complex that Meeks took money from Blackmon.

■■■■ Meeks argues the jury could have concluded that the robbery was an afterthought and that the murder was not committed in the course of a robbery. The defendant's intent to rob must be formed before or at the time of the murder to qualify as capital murder. *Alvarado v. State,* 912 S.W.2d 199, 207 (Tex.Crim.App. 1995). If the defendant committed the theft as an afterthought and unrelated to the murder, he or she did not commit capital murder. *Id.* at 207; *Moody v.*

*State,* 827 S.W.2d 875, 892 (Tex.Crim.App. 1992). Meeks argues that, because a rational person could conclude the murder did not occur in the course of a robbery, she was entitled to an instruction on the lesser-included offense.

■ Meeks fails to meet the second part of the *Royster* test because no evidence was presented that she was guilty of only murder. *See Rushing v. State,* 50 S.W.3d 715, 732 (Tex.App.-Waco 2001), *aff'd,* 85 S.W.3d 283 (Tex.Crim.App.2002). Similar to the circumstances examined in *Rushing,* no evidence was presented Meeks murdered Blackmon for a reason other than money. "It is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense. Rather, there must be some evidence directly germane to a lesser-included offense for the factfinder to consider before an instruction on a lesser-included offense is warranted." *Cantu v. State,* 939 S.W.2d 627, 646 (Tex. Crim.App.1997); *see Macias v. State,* 959 S.W.2d 332, 336 (Tex.App.-Houston [14th Dist.] 1997, pet. ref'd). The evidence indicates Meeks sought money from the victim. Ample evidence was presented that she formed an intent to take money from the victim before the murder, and did rob him. No evidence raises only the lesser offense of murder, and the trial court did not abuse its discretion in denying the instruction on the lesser offense of murder.

For the reasons stated, we affirm the judgment of the trial court.