In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00135-CR
______________________________


WILLIAM GLENN BULINGTON, JR., Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 115th Judicial District Court
Upshur County, Texas
Trial Court No. 13,597


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

          William Glenn Bulington, Jr., was convicted of capital murder (killing more than one
person, same criminal episode


) and sentenced to life imprisonment (the State did not seek
the death penalty). Bulington appeals, contending in his first three points of error that the
evidence is legally and factually insufficient to support his conviction, that the evidence is
legally insufficient to corroborate the testimony of an accomplice witness, and that the trial
court erred in failing to include in the jury charge an instruction on the necessity for
corroboration of accomplice witness testimony. In his other three points of error, Bulington
contends that the jury charge should have included an inverse murder instruction, that he
received ineffective assistance of trial counsel, and that the rights of a third party were
violated. For the reasons stated below, we overrule these contentions and affirm the
judgment. 
 

Background Facts
          The evidence showed that, around Thanksgiving 2003, Bulington and Ruby Tate
were living together at a motel when Tate became acquainted (as a prostitute) with John
Reese. Reese invited Bulington and Tate to live with him in a house that he either owned
or rented. Bulington was to do some repair work on the house, and Tate was to keep it
clean and prepare the meals. Bulington and Tate apparently agreed to these terms and
moved into the house with Reese. This house had a pond behind it. Tate testified that,
on the weekend of December 13–14, 2003, Keith Crutcher and L. V. Johnson


 "showed
up" at Reese's house. On the evening of the 14th, they were all "doing drugs" and, at a
time when they were all in the kitchen, Bulington and Reese went outside. Bulington
returned and told Tate that Reese was leaving. Tate went outside to talk to Reese, and
when she returned, she went to the kitchen sink. Crutcher and Johnson were still in the
kitchen, but "[Bulington] was nowhere in sight." As Tate was in the kitchen starting the
dishwasher, she heard a shot and saw Johnson fall to the floor. Bulington was standing
in the doorway less than ten feet away with a .22 rifle in his hands. Crutcher started to run,
but Bulington shot him as he ran. Tate then saw Bulington shoot both men again as they
lay on the floor. Bulington told Tate if she panicked, or did not help him clean up evidence
of the murders, he would kill her also. Tate testified she did as she was told and helped
Bulington load the bodies into the back of Crutcher's blue Dodge pickup truck that was
parked outside the house. She said Bulington continued to threaten to kill her if she ever
said anything about the killings or if she did not help him. Bulington then backed the truck,
with Tate's assistance, to the pond behind the house. Bulington took the bodies out of the
truck, and Tate helped him load them into a boat. Bulington then took the boat to the
middle of the pond, where Tate observed Bulington tie ropes around the necks of the
victims. The ropes were attached to what Tate described as "cinder" blocks. She then
saw Bulington dump the bodies into the water. Tate testified that, after this, she and
Bulington returned to the house, where she cleaned up everything. She said she picked
up seven shell casings and gave them to Bulington, who put them in a beer can. Tate
testified Bulington drove Crutcher's truck for three or four days before he got rid of it. 
According to Tate, she and Bulington were planning to get married, and he had promised
to give her a ring. She further testified that, at the time Bulington sold Crutcher's truck,
"just before Christmas," they had no money, but Bulington gave her a diamond ring on
Christmas. 
          In March 2004, a fisherman observed a body floating on the surface of the pond
behind Reese's house. When officers arrived the next day, they found two bodies in the
pond, both with ropes around their necks tied to what was described as "heydite" blocks. 
During the ensuing investigation, Johnson's blood was found on floor tiles at the house. 
A shopping discount card belonging to Crutcher was found at this same location. 
Investigator Roxanne Warren testified she found approximately six .22 shell casings in a
beer can at the scene. Medical examiner Sheila Spotswood, M.D., said she found a total
of six bullet wounds in the two victims (four in Crutcher and two in Johnson), recovered
fragments of a total of six bullets from the two bodies, and found no evidence of any other
wounds or that any other bullets had passed through either body. 
          In an initial interview, Tate gave Warren three different accounts of what she knew
about the killings. Tate testified she first told Warren that Reese killed the two men. She
then testified she told Warren she did not know what happened because she was not
present. Both Tate and Warren testified Tate finally told Warren the killings occurred as
described above. Warren testified that, because of other known facts revealed by the
investigation, she did not believe Tate's first two accounts were credible. However, she
believed the third version was "truthful." Other relevant background facts of the case will
be provided in the appropriate discussions below. 
Sufficiency of the Evidence To Corroborate Accomplice
          In his brief before this Court, Bulington presents his first three points of error
together. They concern the sufficiency of the evidence to corroborate the testimony of an
accomplice witness and the trial court's failure to charge the jury on the necessity for such
corroboration. Bulington contends Tate was an accomplice in the killings of Crutcher and
Johnson. 
          In our review of the legal sufficiency of the evidence, we employ the standards set
forth in Jackson v. Virginia, 443 U.S. 307, 319 (1979). This calls on the reviewing court to
view the relevant evidence in the light most favorable to the verdict and determine whether
any rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In our
review, we must evaluate all the evidence in the record, both direct and circumstantial,
whether admissible or inadmissible. Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim.
App. 1999).
          In a factual sufficiency review, the appellate court views all the evidence in a neutral
light and determines whether the evidence supporting the verdict is too weak to support
the finding of guilt beyond a reasonable doubt or if evidence contrary to the verdict is
strong enough that the beyond-a-reasonable-doubt standard could not have been met. 
Threadgill v. State, 146 S.W.3d 654, 664 (Tex. Crim. App. 2004) (citing Zuniga v. State,
144 S.W.3d 477, 486 (Tex. Crim. App. 2004)).
          Bulington's first argument under these first three points is that, because there was
insufficient corroboration of Tate's testimony, there is insufficient evidence to establish the
corpus delecti. The corpus delecti rule is a rule of evidentiary sufficiency stating, in
summary, that an extrajudicial confession of wrongdoing, standing alone, is not enough to
support a conviction. There must exist other evidence showing that a crime has been
committed. Williams v. State, 958 S.W.2d 186, 190 (Tex. Crim. App. 1997). It need not
be sufficient by itself to prove the offense, but must merely render the commission of the
offense more probable than it would otherwise be. Id.; Rocha v. State, 16 S.W.3d 1, 4–5
(Tex. Crim. App. 2000).


 Where a defendant is convicted of capital murder, the underlying
conduct that elevates the murder to capital murder must also be corroborated. Emery v.
State, 881 S.W.2d 702, 705 (Tex. Crim. App. 1994). 
          During the months following the deaths of Crutcher and Johnson, Bulington made
inculpatory statements to three of the State's witnesses. He told Phil Wheeler, a sometime
employer, he had shot one of the victims twice, the other five times, and one was shot in
the head. Wheeler characterized Bulington's statements as "bragging." Bulington showed
a newspaper article about the murders to Wheeler and told him the article had something
to do with Crutcher's blue Dodge truck, which Wheeler saw Bulington driving. Wheeler
heard Bulington trying to sell the truck to some of Wheeler's customers. Bulington told
Wheeler the truck came from the location of the murders. 
          Ryan Allen testified Bulington joked with him that, to get rid of a person, one stabs
or shoots them and puts them in a pond or lake. Allen also said Bulington showed him a
newspaper clipping of the story of the killings and laughed or smirked when telling Allen
about it. Allen also saw Bulington driving a blue Dodge truck sometime around the end of
2003. Bulington told Allen he got the truck from someone who owed him money and who
had left town. Allen testified Bulington sold this truck to Theresa Robertson, a long-time
friend of Allen's wife. Allen testified that, after news of the truck aired on television,
Bulington told him to get rid of the truck. 
          Michael Harris testified that Bulington told Harris he had shot two persons and that
Tate had helped clean up after the killings. Bulington told Harris he had considered
shooting Tate also. 
          There was evidence, independent of Bulington's statements to the above witnesses,
that showed the commission of two murders. The two victims were found in the same
pond, at the same time. One had been shot two times and the other four times; both were
shot with a small caliber weapon. Both victims had "heydite" ("cinder") blocks tied around
their necks. Johnson's blood and a shopping card registered to Crutcher were found at the
house near where the bodies were discovered; Bulington had been living at that house. 
Bulington was in possession of Crutcher's truck; Bulington tried to, and did, sell the truck,
and was unable to produce a title to it. This evidence corroborates Bulington's statements
and renders more probable than not the commission of two murders during the same
episode or transaction. See id. The evidence is legally and factually sufficient to establish
the corpus delecti. 
          We now turn to Bulington's contentions that there was insufficient evidence to
corroborate Tate's testimony and that the trial court erred in not instructing the jury on the
need for corroboration of an accomplice witness. Article 38.14 provides as follows:
A conviction cannot be had upon the testimony of an accomplice
unless corroborated by other evidence tending to connect the defendant with
the offense committed; and the corroboration is not sufficient if it merely
shows the commission of the offense.

Tex.Code Crim. Proc. Ann. art. 38.14 (Vernon 2005).

          Corroboration of the accomplice witness testimony is a statutory requirement
imposed by the Legislature, and the Texas Court of Criminal Appeals has declined to
"impose legal and factual sufficiency standards upon a review of accomplice witness
testimony under Article 38.14." Cathey v. State, 992 S.W.2d 460, 462 (Tex. Crim. App.
1999). 
          The test for determining the sufficiency of the corroboration is to eliminate the
accomplice witness testimony from consideration and then determine if there is any other
incriminating evidence which "tends to connect" the defendant with the crime. Meeks v.
State, 135 S.W.3d 104, 112 (Tex. App.—Texarkana 2004, pet. ref'd) (citing Hernandez v.
State, 939 S.W.2d 173, 176 (Tex. Crim. App. 1997); Reed v. State, 744 S.W.2d 112, 126
(Tex. Crim. App. 1988)). The nonaccomplice evidence does not need to prove all the
elements of the alleged offense. Meeks, 135 S.W.3d at 112 (citing Hernandez, 939
S.W.2d at 176; Underwood v. State, 967 S.W.2d 925, 928 (Tex. App.—Beaumont 1998,
pet. ref'd)). 
          Tate was not an accomplice as a matter of law. An accomplice is one who
participates with a defendant before, during, or after the commission of a crime and who
acts with the required culpable mental state. Paredes v. State, 129 S.W.3d 530, 536 (Tex.
Crim. App. 2004). This participation must involve some affirmative act that promoted the
commission of the offense with which the accused is charged; an accomplice as a matter
of law is one who is susceptible to prosecution for the offense with which the accused is
charged or a lesser included offense. Id. Tate was arrested and charged with tampering
with evidence, but not murder or capital murder. Tampering with evidence is not a lesser
included offense of capital murder.


 
          Bulington contends Tate was an accomplice as a matter of fact. If evidence
presented by the parties is conflicting, and it is not clear whether the witness is an
accomplice, the trial court must instruct the jury to decide whether the witness was an
accomplice. Id. An analogous situation was examined by the Austin Court of Appeals in
Navarro v. State, 863 S.W.2d 191, 202 (Tex. App.—Austin 1993), pet. ref'd, 891 S.W.2d
648 (Tex. Crim. App. 1994). There, as here, the purported accomplice witness was in the
kitchen, with his back turned to the defendant, when he heard a shot fired. The witness
assisted Navarro in burying the body and failed to report it. Navarro, 863 S.W.2d at 202. 
Key to the court's analysis was the lack of evidence showing the witness knew that Navarro
planned to kill the victim or commit any crime involving deadly force. Id. The court held
the trial court did not err in refusing to instruct the jury to answer whether the witness was
an accomplice as a matter of fact.



          In the instant case, the only evidence that can be said to contradict Tate's testimony
was the testimony that she gave two other versions of events before the version to which
she testified at trial. As discussed above, Warren testified that, when she first interviewed
Tate, Tate offered two accounts concerning the killings, neither of which made sense to
Warren in light of other things she had learned in her investigation. Tate finally gave a
written statement that did not contradict an earlier statement given by Reese, the owner
or tenant of the property where the bodies were found and of the house where Johnson's
blood was found. In a later interview, Tate gave Warren a note with specifics about the
murder scene and Bulington's threats to Tate after the bodies were discovered. Based on
this note, and Tate's earlier written statement, Warren and other authorities discovered
additional evidence, including Johnson's blood in the kitchen and the shell casings in a
beer can. 
          There was no evidence contradicting Tate's testimony. More importantly, there was
no evidence Tate anticipated Bulington's violent intentions, and there was no evidence
Tate and Bulington shared a "common understanding . . . that some offense would be
committed and that deadly force was contemplated." Herrick v. State, 825 S.W.2d 215,
217 (Tex. App.—Houston [1st Dist.] 1992, no pet.). Without evidence Tate knew of
Bulington's violent plans, or any contemplation that some crime was to be committed, the
trial court was not obliged to instruct the jury on the issue of accomplice as a matter of fact. 
          Even if Tate could be found to have been an accomplice, there is sufficient evidence
tending to connect Bulington to the murders. The two bodies were found at the same time,
in the same place, both with ropes tied around their necks and connected to "heydite"
("cinder") blocks. Both men died from multiple gunshot wounds, and the medical examiner
testified Crutcher had been shot in the back. Johnson's blood was found in the house on
the property where the bodies were found. There was also some evidence that, around
the time of the murders, Bulington was in possession of a .22 caliber rifle and ammunition
for such weapon. Bulington was seen in possession of Crutcher's truck by at least two
witnesses. Bulington sold Crutcher's truck to Robertson, who also saw Bulington in the
truck before buying it. Robertson testified Bulington told her he could not produce a title
to the truck. Bulington told three people he had committed the murders. Bulington told
Wheeler he had shot one victim two times and the other five times. The medical examiner
testified both victims had multiple gunshot wounds. And finally, six or seven .22 caliber
casings were found at the crime scene. 
          Further, Bulington did not object to the trial court's charge. Any error in the omission
of an accomplice witness instruction would, therefore, be reversible only if it caused
egregious harm. Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on
reh'g); Splawn v. State, 160 S.W.3d 103, 107 (Tex. App.—Texarkana 2005, no pet.). In
determining whether egregious harm occurred, we review the error in light of the entire jury
charge, the state of the evidence, including the contested issues and the weight of
probative evidence, the argument of counsel, and all other relevant evidence revealed by
the record as a whole. Skinner v. State, 956 S.W.2d 532, 544 (Tex. Crim. App. 1997)
(quoting Almanza, 686 S.W.2d at 171). Errors resulting in egregious harm are those that
affect the very basis of the case, deprive the defendant of a valuable right, or vitally affect
a defensive theory. Hutch v. State, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996) (citing
Almanza, 686 S.W.2d at 171); Washington v. State, 59 S.W.3d 260, 265 (Tex.
App.—Texarkana 2001, pet. ref'd). There was sufficient evidence to corroborate Tate's
testimony. "Under the egregious harm standard, the omission of an accomplice witness
instruction is generally harmless unless the corroborating (non-accomplice) evidence is 'so
unconvincing in fact as to render the State's overall case for conviction clearly and
significantly less persuasive.'" Herron v. State, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002)
(quoting Saunders v. State, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991)). The
corroborating evidence here is not "so unconvincing." Bulington's first three points of error
are overruled. 
Inverse Murder Instruction 
          Bulington complains the trial court erred in not giving an inverse murder instruction
in its charge to the jury. The charge contained a paragraph instructing the jury that, if it
found Bulington killed Johnson but had a reasonable doubt he had killed Crutcher in the
same criminal episode, the jury should acquit Bulington of capital murder and find him
guilty of the lesser offense of murder. On appeal, Bulington contends the trial court should
have included a paragraph instructing in the inverse: that, if the jury found Bulington had
killed Crutcher but had a reasonable doubt as to whether Bulington had killed Johnson in
the same criminal episode, it must acquit Bulington of capital murder and find him guilty
of the lesser offense of murder.



          Bulington did not lodge this objection to the trial court. In fact, Bulington objected
to the State's request for a charge on the lesser included offense of murder. Bulington was
emphatic in his opposition to such lesser included charge. This was clearly a strategic
decision on Bulington's part. He argued to the trial court that both parties had conducted
voir dire on the assumption that the only charged offense would be capital murder, with its
particular range of punishment, and he specifically excepted to any opportunity for the jury
to convict based on murder, rather than capital murder. Bulington cannot complain on
appeal of denial of a defensive theory that he eschewed at trial.


 This point is overruled.



Ineffective Assistance of Counsel
          Bulington contends that, because there was no accomplice witness instruction and
no inverse murder instruction in the court's charge to the jury, he received ineffective
assistance of counsel. 
          It is the defendant's burden to prove ineffective assistance of counsel by a
preponderance of the evidence. Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App.
1999). To prevail on a claim of ineffective assistance of counsel, an appellant must show
both 1) that counsel's performance was so deficient it was outside the range of reasonable
professional judgment and 2) that the appellant was prejudiced by this performance and
there is a reasonable probability, one sufficient to undermine confidence in the outcome
of the trial, that the result of the trial would have been different. Id. at 812. An appellant
must demonstrate trial counsel's ineffectiveness in light of the totality of the circumstances. 
Id. at 813. The appellant must overcome the presumption that the challenged action might
be considered sound trial strategy. Id. 
          Bulington appears to concede there is no reversible error under this point. He
concludes this section of his brief before this Court as follows: "Due to the length of trial,
the number of witnesses, the number of exhibits, the complexity of this case, and the
omission of only two instructions, with the inclusion of one being debatable, any analysis
precludes relief under this point." (Citations omitted.) 
          Nonetheless, because we have held that Tate was not an accomplice and that no
accomplice witness instruction was required, and because, as a matter of "sound trial
strategy," Bulington objected at trial to the inclusion of any instruction on the lesser offense
of murder, we conclude Bulington has not shown he received ineffective assistance of
counsel. This point of error is overruled.
Deprivation of Tate's Rights

          Bulington contends that Tate's rights "to remain silent, to receive correct Miranda



warnings, and to not be badgered by law enforcement during interrogation" were violated
by the manner in which the State procured her statements. Nonetheless, as Bulington's
own brief before this Court concedes, he does not have standing, under the circumstances
of this case, to challenge a third party's alleged deprivation of rights. See Busby v. State,
990 S.W.2d 263, 270 (Tex. Crim. App. 1999). Bulington's last point of error is overruled. 
          We affirm the judgment.



                                                                           Donald R. Ross
                                                                           Justice 

Date Submitted:      October 5, 2005
Date Decided:         November 1, 2005

Publish