

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-18-00129-CR

DANIEL MONTALVO, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 16F0235-102

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

Stephen Shires received a handwritten letter in Shelby County, Texas, originating from the Texas Department of Criminal Justice (TDCJ) Telford Unit in Bowie County, Texas, threatening that the Aryan Brotherhood would kill his two daughters if he did not pay $1,000.00. Because his children were named in the letter, Shires took the threat "very seriously." The letter's return address suggested the letter was from Roger Clifton, a Telford-Unit inmate. The ensuing investigation—during which two other, similar, threatening letters were found and sidetracked—pointed to Daniel Montalvo as the person who actually copied the three letters, at the request of Clifton, conveying a message composed by Clifton.

After Clifton pled guilty and was sentenced for his involvement in the letters,[1] Montalvo was convicted of three counts of making a terroristic threat and was sentenced to twenty-five years' incarceration for each conviction, with the sentences to run concurrently. On appeal, Montalvo contends that there was legally insufficient evidence to support his convictions and that the judgment should be modified to correct factual errors.

Because (1) legally sufficient evidence supports Montalvo's conviction and (2) there are errors in some recitations in the judgment, we modify the trial court's judgment to state that Montalvo pled not guilty to the three counts of terroristic threats and that he entered pleas of true to the two enhancement allegations. We affirm the judgment as so modified.

---

[1]Clifton and Montalvo were each charged with three counts of terroristic threatening. Under the terms of a plea bargain agreement, Clifton pled guilty to all three charges and received a twenty-year sentence for each charge, with the sentences to run concurrently.

*(1)    Legally Sufficient Evidence Supports Montalvo's Conviction*

Montalvo contends that the evidence is legally insufficient to support his convictions under the law of parties because he did not act with the intent to promote or assist the making of terroristic threats. We disagree.

In evaluating legal sufficiency of the evidence, we review all evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). We defer to the responsibility of the trier of fact "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

"A person commits [a terroristic threat] if he threatens to commit any offense involving violence to any person or property with intent to . . . (2) place any person in fear of imminent

3

serious bodily injury . . . or (6) influence the conduct or activities of a branch or agency of the federal government, the state, or a political subdivision of the state." TEX. PENAL CODE ANN. § 22.07(a)(2), (6) (West Supp. 2018). In order for Montalvo to be responsible for the offense under the law of parties, the evidence must establish that Montalvo intended to promote or assist the commission of the offense by soliciting, encouraging, directing, aiding, or attempting to aid Clifton in the commission of the offense. *See* TEX. PENAL CODE ANN. § 7.02(a)(2) (West 2011). This requires a showing that Montalvo "harbored the specific intent to promote or assist the commission of the offense."[2] *Gallardo v. State*, 281 S.W.3d 462, 469 (Tex. App.—San Antonio 2007, no pet.) (quoting *Pesina v. State*, 949 S.W.2d 374, 382 (Tex. App.—San Antonio 1997, no pet.)). Intent may be inferred from the acts, words, and conduct of a defendant. *Cooper v. State*, 67 S.W.3d 221, 225 (Tex. Crim. App. 2002); *McGee v. State*, 774 S.W.2d 229, 234 (Tex. Crim. App. 1989); *Fierro v. State*, 706 S.W.2d 310, 313 (Tex. Crim. App. 1986). Intent is a question of fact to be determined by the trier of fact from all the facts and circumstances in evidence. *Hemphill v. State*, 505 S.W.2d 560, 562 (Tex. Crim. App. 1974).

Jeffery Butler, a criminal investigator working at the Telford Unit, obtained a copy of the first letter and interviewed Clifton, who denied writing the letter. Butler had dealt with Clifton before, and the letter did not appear to be in Clifton's handwriting. Butler testified that, as he

---

[2]"A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." TEX. PENAL CODE ANN. § 6.03(a) (West 2011); *Meeks v. State*, 135 S.W.3d 104, 110–11 (Tex. App.—Texarkana 2004, pet. ref'd) (witness not an accomplice to capital murder because no evidence that witness had conscious desire to aid in murder or lesser-included robbery of victim).

questioned Clifton about the letter, "the first thing" Clifton did was demand a transfer from the Telford Unit because "somebody [was] obviously out to get [him.]"

Butler testified that the threat contained in the letter, followed by Clifton's immediate request for a transfer, was consistent with a "catch out," something Clifton had done before. Butler described a catch out as a prisoner trying to manipulate the system to get a change in housing, cell assignment, or facility through "false allegations of threats against them, writing letters, [or] threatening people." Catch outs were common, according to Butler, occurring "almost daily."

From that point forward, Butler inspected and monitored Clifton's mail. The screening discovered and intercepted the other two threatening handwritten letters before they could leave the prison. Like the first letter, the two intercepted letters purported to be from Clifton. One of the letters was addressed to the Honorable Charles Mitchell, Judge of the 273rd Judicial District Court, and threatened to kill Judge Mitchell, Mitchell's family, and the children of Stephen Shire, District Attorney in Shelby County, while the other letter, although addressed to Texas State Senator Robert Nichols, threatened Shire's children as well as Texas State Senator John Whitmire. Butler believed that all three letters were written with the intent of threatening people in order to influence the TDCJ to transfer Clifton.

Because all three threatening letters appeared to have been written by the same person, the letters were submitted for a DNA analysis. The DNA profiles obtained from the two letters fit only two individuals, Clifton and Montalvo. Butler spoke with both men and recorded two interviews with Montalvo, which were admitted into evidence at trial.

5

During the interviews, Montalvo admitted that he transcribed the three letters in his handwriting for Clifton in exchange for $10.00 of commissary funds, but claimed he never intended to scare or threaten anyone. Montalvo claimed that Clifton wanted the letters sent so that he could be transferred out of the Telford Unit. Clifton's later statements to Butler, and his testimony at trial, confirmed Montalvo's statements. Butler testified that, although Clifton was the principal actor, Montalvo intentionally assisted Clifton in making the threats.

Butler and Shires testified for the State, the three letters and the two recorded interviews were admitted into evidence, and Clifton and Montalvo testified for the defense. The court weighed the evidence, explained the applicable caselaw, and found Montalvo guilty on all three counts alleged in the indictment. After a brief trial on punishment, the trial court found both enhancements paragraphs true and sentenced Montalvo to the minimum sentence, twenty-five years' incarceration on each count.[3]  *See* TEX. PENAL CODE ANN. § 12.42(d) (West Supp. 2018).

Montalvo argues that the evidence is legally insufficient to show he acted with intent to promote or assist in making terroristic threats because he "did not understand the content and nature of Clifton's three letters."[4]  Montalvo's I.Q. was tested to be 77, and he testified that he attended special education classes while in school, only completed the seventh grade before dropping out, and never obtained a GED. Montalvo claimed that he could "understand little words

---

[3]The range of punishment was enhanced due to two prior felony convictions.

[4]Although Texas does not recognize "diminished capacity" as an affirmative defense, a defendant can attempt to use diminished capacity to negate the mens rea element of a crime, which, under the law of parties in this case, requires that Montalvo intended to promote or assist Clifton in making the terroristic threats. TEX. PENAL CODE ANN. § 7.02(a)(2); *Ruffin v. State*, 270 S.W.3d 586, 594 (Tex. Crim. App. 2008); *Jackson v. State*, 160 S.W.3d 568, 573 (Tex. Crim. App. 2005). That is not at issue here.

6

here and there" in the letters, but that he could not really read, and at the time he transcribed the letters, he did not know Clifton's intended use for them.   Clifton testified that Montalvo may have a learning disability, that he knew that Montalvo was "not the smartest" man, and that he took advantage of that in having him transcribe the letters.  However, in the recorded interviews and in his testimony at trial, Montalvo admitted that he knew the letters contained threats against other people, but claimed that he did not think the threats were credible, because Clifton would not act on the threats since he was only sending the letters in order to get transferred.

Deferring to the trial court's role to weigh and resolve conflicts in the evidence, and viewing the evidence in the light most favorable to the verdict, we find that the trial court could have reasonably believed that Montalvo intentionally assisted Clifton in making the threats because there is evidence from Butler and Montalvo, himself, that Montalvo knew the letters contained threats, but that he transcribed the letters anyway.  *See Brooks*, 323 S.W.3d at 912; *Hooper*, 214 S.W.3d at 13.  It is immaterial whether Montalvo believed Clifton intended, or had the capability, to carry out the threats.  *See Dues v. State*, 634 S.W.2d 304, 305–06 (Tex. Crim. App. 1982).  Accordingly, we overrule this point of error.

*(2)	There Are Errors in Some Recitations in the Judgment*

Montalvo also asserts that the trial court's judgment should be modified to correct factual errors.  We agree.

This Court has the power to correct and modify the judgment of the trial court for accuracy when the necessary data and information are part of the record.  *See Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993); *Anthony v. State*, 531 S.W.3d 739, 743 (Tex. App.—Texarkana

7

2016, no pet.). We may sua sponte modify an incorrect judgment, with or without a party's objection on the issue at trial. *See Anthony*, 531 S.W.2d at 743 (quoting *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd)); *Rhoten v. State*, 299 S.W.3d 349, 356 (Tex. App.—Texarkana 2009, no pet.).

Here, the judgment indicates that Montalvo pled guilty to the three counts in the indictment and that he entered pleas of not true to the two enhancement allegations. The record reflects, however, that Montalvo entered a plea of not guilty to the three counts of terroristic threat and that he pled true to the State's two enhancement allegations. Accordingly, we modify the judgment to state that Montalvo pled not guilty to the three counts alleged in the indictment and that he entered pleas of true to the two enhancement allegations.

We affirm the judgment, as modified.


Josh R. Morriss, III
Chief Justice

Date Submitted:     January 3, 2019
Date Decided:       January 30, 2019

Do Not Publish